UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AXCESS GLOBAL SCIENCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>XEMENRY; XEMENRY SHOP; XEMENRY STORE; and XEMENRY SUPPLEMENTS,<br><br>Defendants. | *SEALED*<br><br>**MEMORANDUM DECISION AND ORDER GRANTING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ASSET FREEZE**<br><br>Case No. 2:26-cv-00302-RJS<br><br>District Judge Robert J. Shelby |

Now before the court is Plaintiff Axcess Global Sciences, LLC (AGS)'s Ex Parte Motion for a Temporary Restraining Order (TRO) and Asset Freeze.[1]  For the reasons explained below, the court GRANTS the Motion.

## BACKGROUND

This is a case involving health supplements. AGS develops and licenses formulations of the supplement Beta-Hydroxybutyrate (BHB).[2]  AGS owns U.S. Trademark Registration No. 5261845 for the mark "goBHB®" (Mark), which is applied to both AGS's products and those it has licensed.[3]

---

[1] Dkt. 3, *Plaintiff's* Ex Parte *Motion for a Temporary Restraining Order Including a Preliminary Injunction, Asset Freeze, and Expedited Discovery* (*Motion*).

[2] Dkt. 1, *Complaint for Trademark Infringement* (*Complaint*) ¶ 11.

[3] *Id.* ¶ 12.

Defendants Xemenry, Xemenry Shop, Xemenry Store, and Xemenry Supplements are four unknown entities located in China.[4]  Defendants sell health and dietary products in the United States on eBay.[5]  Though each Defendant operates their own storefront, their similar products and product descriptions suggest they are operated by a single source in China.[6] Amongst the products sold by the Defendants are at least eight ketone supplements (Accused Products)[7] that list either "go BHB" or "goBHB®" as ingredients or formula components.[8]  AGS has not given Defendants licenses to use goBHB in their products or authorized them to use the Mark in connection with their products or advertisements.[9]

On April 13, 2026, AGS filed the Complaint against Defendants alleging trademark infringement under Section 32 of the Lanham Act.[10]  AGS also filed the Motion seeking (1) a temporary injunction enjoining the advertising, offering for sale, and sale of Defendants' Accused Products, (2) a temporary asset freeze, and (3) expedited discovery to determine Defendants' true identities.[11]

The court first considers its jurisdiction and then addresses the Motion.

---

[4] *Id.* ¶ 16.

[5] *Id.* ¶¶ 8, 16.

[6] *See id.* ¶¶ 16–18.

[7] The identified products are sold under multiple eBay item numbers.  Xemenry sells Keto Gummies, OneShot Pure Keto, Exogenous Ketones BHB Supplement, Keto Capsule; Xemenry Shop sells  Keto Gummies; Xemenry Store sells Exogenous Ketones BHB Supplement and Keto Capsule; Xemenry Supplements sells Keto Capsule.  *Id.* ¶¶ 23–26, 29–37.

[8] *Id.* ¶¶ 23–39.

[9] *Id.* ¶ 21.

[10] *Id.* ¶¶ 40–46.

[11] *Motion* at 25–28.

## JURISDICTION

Defendants are subject to this court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides jurisdiction over foreign defendants where (1) a claim arises under federal law, (2) the defendants are not subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the exercise of personal jurisdiction comports with due process.[12]  At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction.[13]  As to the first element, the claim asserted in this action arises under a federal law: the Lanham Act.[14]  With regard to the second requirement, there is no evidence that Defendants are subject to the personal jurisdiction of any state court of general jurisdiction because they are located in China.[15]  Finally, the exercise of personal jurisdiction comports with due process because AGS alleges Defendants have directed their tortious activities—trademark infringement—toward Utah through the advertisement and sale of their products in the state, to the peril of its residents.[16]

## LEGAL STANDARD

In the Tenth Circuit, the court may issue a TRO only when the movant establishes the following four elements:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the [TRO] is issued; (3) that the threatened injury outweighs the harm that the

---

[12] Fed R. Civ. P. 4(k)(2).

[13] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[14] *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[15] *Complaint* ¶¶ 2–6.

[16] *See Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (holding personal jurisdiction over a party is proper "based on the effects of their [out of state] conduct within [the state]" (quotation modified)); *see also Complaint* ¶ 8.

[TRO] may cause the opposing party; and (4) that the [TRO], if issued, will not adversely affect the public interest.[17] A TRO is an extraordinary remedy that may be awarded only if the right to relief is "clear and unequivocal."[18]  In certain cases, a plaintiff faces the additional burden of making a "strong showing" that the substantial likelihood of success on the merits and balance of harms factors weigh in their favor.[19]  This heightened standard applies when a plaintiff seeks a "disfavored injunction."[20]  A disfavored injunction is one that (1) "mandates action (rather than prohibiting it)," (2) "changes the status quo," or (3) "grants all the relief that the moving party could expect from a trial win."[21] The Tenth Circuit defines "the status quo as the last peaceable uncontested status existing between the parties before the dispute developed."[22]

Additionally, an ex parte TRO requires AGS meet a higher burden as well.  A court may issue a TRO without notice to the adverse party only if first, "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and second, "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[23]

## ANALYSIS

The court now turns to its analysis of the factors governing injunctive relief.  Because enjoining Defendants from continuing selling their products on eBay is a change to the status

---

[17] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

[18] *Id.*

[19] *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016).

[20] *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019).

[21] *Id.*

[22] *Id.* at 798 n.3 (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948 (3d. ed. 1998)).

[23] Fed. R. Civ. P. 65(b)(1).

quo, the court concludes that AGS seeks a disfavored injunction, which requires it to make a "strong showing" that the likelihood of success on the merits and balance-of-harms factors weigh in its favor.[24]  Having met its heightened burden on these factors and established its right to relief is clear and unequivocal, AGS is entitled to a temporary restraining order.

## I.        Likelihood of Success on the Merits

AGS has made a strong showing that it is likely to succeed on the merits of its claim. The Lanham Act provides,

> Any person who shall, without the consent of the registrant—use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .[25]

To prevail on a claim of trademark infringement under the Lanham Act, a plaintiff must show "(1) that plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers."[26] AGS satisfies all three elements to establish trademark infringement.

### a.  Protectable Interest

First, AGS must show it has a protectable interest in the Mark.[27]  "Under the Lanham Act, there is a statutory presumption of protectability when the mark is registered."[28] AGS owns

---

[24] See *Fish*, 840 F.3d at 724.

[25] 15 U.S.C. § 1114(1)(a).

[26] *Utah Republican Party v. Herbert*, 141 F. Supp. 3d 1195, 1203 (D. Utah 2015) (quoting *1-800 Contacts, Inc. v.Lens.com, Inc*., 722 F.3d 1229, 1238 (10th Cir. 2013)).

[27] *Id.*

[28] *ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-cv-00207-DN, 2012 WL 3962737 (Sep. 11, 2012) (citing 15 U.S.C. § 1115(a) ("Any registration issued . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark . . . .")).

the registered trademark for "goBHB®."[29]  Therefore, AGS is presumed to have a protectable interest in the Mark.

### b.  Similarity of Marks

Second, AGS must show Defendants "used 'an identical or similar mark' in commerce."[30] Each of the eight Accused Products explicitly lists "goBHB®" or "Go BHB" as ingredients or formula components on their eBay storefront webpages.[31]  This element is satisfied.

### c.  Likelihood of Confusion

Third, AGS must show Defendants' use of the trademark is likely to cause confusion.[32] When determining whether the usage of a trademark is likely to cause confusion, the court must consider the five following non-exhaustive factors:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.[33]

Of these factors, "the degree of similarity is the most important," but "no one factor is dispositive."[34]  Here, five of the six factors weigh strongly in favor of finding a likelihood of confusion.

---

[29] *Complaint* ¶ 12.

[30] *Utah Republican Party*, 141 F. Supp. 3d at 1203.

[31] *Complaint* ¶¶ 15–37.

[32] *Utah Republican Party*, 141 F. Supp. 3d at 1203.

[33] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019) (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).

[34] *Id.*

1. Degree of Similarity Between the Marks

The degree of similarity between the marks indicates a likelihood of confusion.  Courts "test the degree of similarity between marks on three levels: sight, sound, and meaning."[35] These three levels are examined "in the context of the marks as a whole as they are encountered by consumers in the marketplace."[36]  The marks are not to be compared "side-by-side," but rather "the court must determine whether the alleged infringing mark will be confusing to the public when singly presented."[37]

Here, the allegedly infringing marks are very similar to AGS's Mark in sight, sound, and meaning.  "goBHB®" as used by Defendants is identical in sight and sound to AGS's Mark.  It also has the same meaning, as it is listed in the ingredients section on the products' labels.[38]  "Go BHB" is only slightly different in sight from AGS's Mark, and the two marks are identical in sound.  The Defendants' mark is similarly listed as an ingredient or a component "formula."[39] Altogether, factor one strongly weighs in favor of finding consumers are likely to confuse the infringing marks with AGS's Mark.

2. Intent of Infringement

The second factor requires the court to consider "whether [D]efendant[s] had the intent to derive benefit from the reputation or goodwill of [P]laintiff."[40]  The "deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another which in

---

[35] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090 (10th Cir. 1999).

[36] *Id.* (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986)).

[37] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (first quoting *Beer Nuts*, 805 F.2d at 941; then quoting *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987)).

[38] *Complaint* ¶¶ 22–39.

[39] *Id.*; *see also Motion* at 6–7, 9–10.

[40] *King of the Mountain Sports*, 185 F.3d at 1092 (quoting *Jordache*, 828 F.2d at 1485).

turn supports a finding of likelihood of confusion."[41]  Here, not only did Defendants choose to adopt similar or identical marks to AGS's Mark, they even used the registered trademark symbol itself.[42]  These facts provide a strong inference that Defendants intended to derive benefit from the reputation or goodwill of AGS.  This factor weighs in favor of finding a likelihood of confusion.

3.  Evidence of Actual Confusion

The third factor instructs the court to consider whether there is evidence of consumers being actually confused.[43]  AGS does not provide evidence of actual confusion.  An absence of evidence of actual confusion "does *not* necessarily support a finding of *no* likelihood of confusion, especially when the products involved are inexpensive. . . .  Purchasers are unlikely to bother to inform the trademark owner when they are confused about an inexpensive product."[44]  The Accused Products are inexpensive, offered for less than $10 for packs of 30.[45]  Therefore, the lack of evidence of actual confusion does not weigh against a finding of confusion.  This factor is neutral in the likelihood of confusion analysis.

4.  Similarity of Products and Manner of Marketing

The fourth factor requires courts to consider "the similarity of products and manner of marketing."[46]  "The greater the similarity between products and services, the greater the

---

[41] *Beer Nuts*, 805 F.2d at 927.

[42] *Complaint* ¶¶ 22–26, 28.

[43] *Affliction Holdings*, 935 F.3d at 1115.

[44] *Beer Nuts*, 805 F.2d at 928.

[45] *Motion* at 18–19; *see, e.g.*, *Keto Gummies*, eBay, https://ebay.us/m/Lah5Pc [https://perma.cc/JF9B-UXYY] (last visited Apr. 21, 2026) ($8.35 for 30 gummies); *Keto Capsules*, eBay, https://ebay.us/m/jU5GSh [https://perma.cc/7Y8Y-KZ8L] (last visited Apr. 21, 2026) ($9.96 for 30 capsules).

[46] *Affliction Holdings*, 935 F.3d at 1115.

likelihood of confusion."[47]  Both AGS and Defendants sell supplements to promote blood ketone

levels.[48]  And both AGS and Defendants market and sell their products through online retail

stores.[49]  These commonalities weigh in favor of finding a likelihood of consumer confusion

over the source and affiliation of the products.

5.  Degree of Consumer Care

The fifth factor instructs courts to consider "the degree of care likely to be exercised by

purchasers."[50]  As with evidence of actual confusion, "buyers typically exercise little care in the

selection of inexpensive items that may be purchased on impulse."[51]  Because of the Accused

Products' low cost, consumers likely use a low degree of care when selecting the products.

Therefore, this factor also leans in favor of finding consumer confusion.

6.  Strength of AGS's Mark

Finally, the court considers "the strength or weakness of the marks."[52]  "A strong

trademark is one that is rarely used by parties other than the owner of the trademark, while a

weak trademark is one that is often used by other parties."[53]  The court considers two

components in assessing the strength of the trademark: "(1) Conceptual Strength: the placement

of the mark on the distinctiveness or fanciful-suggestive-descriptive spectrum; and (2)

Commercial strength: the marketplace recognition of the value of the mark."[54]

---

[47] *Universal Money Ctrs.*, 22 F.3d at 1531 (quoting *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980)).

[48] *Complaint* ¶¶ 11, 22–37.

[49] *Id.* ¶¶ 13–39.

[50] *Affliction Holdings*, 935 F.3d at 1115.

[51] *Beer Nuts*, 805 F.2d at 926.

[52] *Affliction Holdings*, 935 F.3d at 1115.

[53] *King of the Mountain Sports*, 185 F.3d at 1093.

[54] *Id.* (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:83 (4th ed. 1996)) (quotation modified).

AGS's Mark has both conceptual and commercial strength.  The Mark is distinctive, as the addition of "go" to BHB does not itself describe beta-hydroxybutyrate generally.  The Mark also has marketplace recognition, as evidenced by it retailing at common stores such as Walmart, Target, Walgreens, and CVS.[55]  The company's sales at many well-visited stores establish strong commercial strength.  This factor therefore leans in favor of finding likely consumer confusion.

Because five of the six factors weigh toward consumer confusion, the final Lanham Act element is satisfied.  Accordingly, the court concludes AGS is likely to prevail on the merits in showing Defendants infringed upon its trademark.  This satisfies the heightened requirement necessary to obtain a disfavored TRO.

## II.   Irreparable Harm

The court finds AGS has demonstrated it will suffer irreparable harm absent injunctive relief.  Demonstrating irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction . . . ."[56]  The movant must demonstrate significant risk that it "will experience harm that cannot be compensated after the fact by money damages."[57]  For harm to be irreparable, it must be "imminent, certain, actual and not speculative."[58]  In determining whether irreparable harm will result, the court may consider intangible harms like the "loss of

---

[55] *See Complaint* ¶ 13.

[56] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th. Cir. 2017) (citation omitted).

[57] *Id.* (citation omitted).

[58] *Colorado v. EPA*, 989 F.3d 874, 886 (10th Cir. 2021) (citation omitted).

goodwill or competitive market position,"[59] as well as a defendant's "lack of financial wherewithal to satisfy a judgment."[60]

Here, AGS persuasively argues it will suffer irreparable harm absent injunctive relief through diverted future sales and the weakening of AGS's public perception and goodwill associated with goBHB®.[61] With Defendants' products being sold on the open market using AGS's Mark, AGS is essentially forced to compete with its own product to obtain a fraction of the product's market share. AGS also stands to suffer loss of customer goodwill, as it is no longer able to ensure its brand is only associated with other products of a certain quality. And, most favorable to the finding of irreparable harm, AGS is unlikely to recover money damages absent emergency injunctive relief. Defendants are unknown foreign entities located in China.[62] Without an asset freeze, Defendants may shutdown their domestic operations and transfer their assets from the United States before litigation resolves.[63] For these reasons, the court finds AGS has clearly established that it will suffer irreparable harm absent injunctive relief.

## III.    Balance of Harms

AGS has made a strong showing the balance of harms weighs in its favor. "[W]hen the case for infringement is clear," this court should not consider any financial harms to a

---

[59] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

[60] *In re BRCA1-, BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 3 F. Supp. 3d 1213, 1255 (D. Utah) (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) (finding irreparable injury where (1) the parties were direct competitors; (2) the plaintiff had demonstrated a loss of market share; and (3) evidence existed suggesting that any judgment against the defendant would not be satisfied)), aff'd and remanded sub nom. *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755 (Fed. Cir. 2014)).

[61] *Motion* at 21–23 (citing *Complaint* ¶ 44).

[62] *Complaint* ¶¶ 2–5.

[63] *See Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (finding "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm").

11

defendant's business "built upon that infringement."[64]  As the court explained above, AGS presents evidence of numerous ongoing injuries from Defendants' conduct.[65]  Similarly, any harm Defendants suffer due to an injunction temporarily enjoining the advertising and continued sale of the Accused Products is of Defendants' own making and does not tip the balance of the harms in their favor.  The court therefore finds that, given the lack of any cognizable harm to Defendants, and the significant ongoing and irreparable harm to AGS, the balance of harms strongly favors the latter.

## IV.    Public Interest

Issuance of a TRO is in the public interest.  The public has an interest in "the right . . . not to be deceived or confused."[66]  Unless the court enjoins the sale of Defendants products that infringe upon AGS's trademark, the public will continue to be deceived, confused, and harmed by Defendants' unlawful conduct.  Thus, the Court finds AGS has established that issuing injunctive relief is in the public interest.

## V.    Ex Parte TRO

Having found AGS has made a strong showing that each TRO factor weighs in their favor, the court now turns to whether it is entitled to an ex parte TRO and an asset freeze.

Under Federal Rule of Civil Procedure Rule 65(b), a court may issue a TRO without notice to the adverse party only if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

---

[64] *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) (discussing trade dress infringement under the Lanham Act).

[65] *See supra* Section II.

[66] *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (discussing the public interest in the trademark context).

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.[67]

Ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."[68] Notice should not be required when providing it would render further prosecution of the action "fruitless," such as when the alleged infringer will likely dispose of the infringing goods before the hearing.[69]

AGS certifies in its Motion why notice to Defendants should not be required.[70] And as explained above, AGS has shown it is suffering and will continue to suffer immediate, irreparable harm because of Defendants' continued sale of the infringing Accused Products. AGS also argues that notice should not be given to Defendants because doing so will allow them to move their assets beyond the court's jurisdiction, continue their unlawful business, and to destroy or dissipate their assets altogether.[71] Other courts have recognized the need for ex parte relief in cases involving foreign entities operating over the internet.[72]

The court agrees with AGS that ex parte relief is particularly appropriate in circumstances involving foreign entities operating over the internet, as is the situation here, and

---

[67] Fed. R. Civ. P. 65(b).

[68] *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

[69] *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (discussing circumstances where ex parte TROs are appropriate).

[70] *Motion* at 13–14.

[71] *Id.*

[72] *See, e.g., Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV 14-06680, 2014 WL 12561613, at *4 (C.D. Cal. Aug. 27, 2014) (unpublished) (finding a plaintiff had sufficiently established that notice before issuing a TRO should not be required in part by alleging that the defendant could easily hide, destroy, conceal, or transfer the counterfeit goods and records, and the defendant's manufacturing facility was located outside of the United States); *see also Axcess Global Scis., LLC v. Euapeark Health Prod.*, No. 2:25-cv-00152, dkt. 22, at *9–10 (D. Utah Aug. 7, 2025) (unpublished) (granting ex parte TRO restraining foreign defendants operating over the internet); *Axcess Global Scis., LLC v. Frontrow Corp. LTD*, No. 2:26-cv-00139, dkt. 18, at *9–10 (D. Utah Mar. 1, 2026) (unpublished) (same).

finds that AGS has met the ex parte requirements of Rule 65(b). The court will therefore issue the TRO without notice to Defendants.

## VI.    Asset Freeze

AGS additionally seeks the temporary freezing of Defendants' assets to preserve its right to an accounting.[73]  The court may order an asset freeze "to assure the availability of permanent relief."[74]  "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."[75]

AGS produces evidence that Defendants sell the Accused Products on eBay, that Defendants are based in China, and that Defendants are likely to move their assets once they become aware of the present proceedings.[76]  That is, AGS argues Defendants will move their financial assets outside of this court's jurisdiction where they can hide or dispose of them once given notice of this TRO, thereby rendering an accounting meaningless.[77]  Because AGS seeks Defendants' profits from their unlawful acts, it argues that an asset freeze for Defendants' financial accounts that have received proceeds from the sale of the Accused Products is appropriate.[78]

The court agrees.  It finds AGS's contention that Defendants will seek to move their assets beyond this court's jurisdiction, and hide and dispose of them, supports the requested asset

---

[73] *Motion* at 25–26.

[74] *Klein-Becker USA, LLC v. Tahini*, No. 2:07-cv-00521-DB, 2008 WL 11340043, at *3 (D. Utah Aug. 15, 2008)(quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)).

[75] *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (citation omitted).

[76] *Complaint* ¶¶ 14–18; *see also* Dkt. 3-1, *Declaration of Brian N. Platt in Support of Plaintiff's Ex Parte Motion for a Temporary Restraining Order Including a Temporary Injunction, a Temporary Asset Freeze, and Expedited Discovery* ¶¶ 4–7.

[77] *Motion* at 25–26.

[78] *Id.* at 26.

freeze.  Thus, to preserve AGS's right to an accounting and ensure the availability of permanent relief, the court grants AGS's request for an asset freeze.[79]

## VII.    Expedited Discovery

AGS also requests leave to serve limited discovery on eBay prior to a Rule 26(f) conference to determine Defendants' true identity, identify information relating to the sales of Accused Products, and identify the location of any proceeds of Defendants' unlawful course of conduct.[80]  Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."[81]  However, "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts,"[82] and the court may "modify the normal . . . limitations that apply under the discovery rules where good cause is shown."[83]  Courts may permit financial discovery to aid in the identification of unknown defendants and unknown accounts.[84]  To obtain

---

[79] Under Federal Rule of Civil Procedure 65(d)(2), the court has authority to bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" to a TRO. Fed. R. Civ. P. 65(d)(2). Since eBay is a participant in the processing of Defendants' sales, the court finds it may bind eBay by this Order.

[80] *Motion* at 26–28.

[81] Fed. R. Civ. P. 26(d).

[82] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (quoting *Martinez v. Schock Transfer*, 789 F.2d 848, 850 (10th Cir. 1986)); *see also* Fed. R. Civ. P. 26(d)(1) (providing the court may permit discovery prior to a Rule 26(f) conference by court order).

[83] *Sara Lee Corp. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2009 WL 1765294, at *1 (D. Utah Jun. 22, 2009) (unpublished).

[84] *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (stating "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

expedited discovery, a movant must show good cause for departure from the usual discovery process.[85]  Courts have found good cause to exist when a party seeks a preliminary injunction.[86]

The court finds good cause exists here.  AGS has shown an asset freeze is necessary to prevent Defendants from hiding, disposing of, or otherwise moving their assets beyond the court's jurisdiction.  Without expedited discovery to obtain Defendants' financial information prior to a Rule 26(f) conference, the asset freeze may be ineffective as it is likely Defendants' will have moved their assets.  Accordingly, AGS may pursue expedited discovery from eBay prior to any Rule 26(f) conference for information relating to the identity of Defendants, sales of the Accused Products on eBay, and the location of proceeds related to those sales.

## VIII.  Bond

Under Federal Rule of Civil Procedure 65(c), the court may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[87]   The court has the discretion to forgo requiring a bond where "there is an absence of proof showing a likelihood of harm."[88]   Here, the court finds no bond is required due to the absence of a likelihood of harm to Defendants.  When Defendants receive notice of this action and appear, Defendants may move to require a bond.

---

[85] *Vivint, Inc. v. Sunrun, Inc.*, No. 2:24-cv-0034-JNP-DBP, 2024 WL 3069228, at *1 (D. Utah Jun. 20, 2024) (unpublished).

[86] *See, e.g.*, *1524948 Alberta, Ltd. v. Doe*, No. 2:10-cv-0900-TS, 2010 WL 3743907, at *1 (D. Utah Sept. 23, 2010) (unpublished).

[87] Fed. R. Civ. Pro. 65(c).

[88] *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (citation omitted); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (highlighting "the latitude given to courts in making bond decisions" when issuing injunctive relief).

## TEMPORARY RESTRAINING ORDER

Based on the foregoing reasons, the Motion is GRANTED.[89]  It is HEREBY ORDERED:

1.      Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them (Restrained Parties) are temporarily enjoined and restrained from:

(a)    Advertising, selling or offering for sale: (i) any product that displays on its product label or in its advertising the goBHB® trademark or similar marks, to include "Go BHB"; (ii) any of the Accused Products as defined in the Complaint; and (iii) the following eBay Product Numbers on eBay: 356317662747, 355662715481, 355395887727, 356362501767, 356362483366, 357667254512, 357672721047, 357961327519, 355493302224, 357961327579, 357961327551, 356314663214, 356364003264, 357667195658, 356367488362, 157209560422, 157209506099, 387516925627 (collectively, the "Restrained Products");

(b)    Aiding, abetting, contributing to, or otherwise assisting anyone in advertising, selling or offering for sale any Restrained Product; and

(c)    Effecting assignments or transfers, forming new entities or associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (b).

2.      Defendants are temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further order of the court.

---

[89] Dkt. 3.

3.  Upon AGS's request, any third party who is: (i) providing services (including financial services) for any Restrained Party; (ii) providing services in connection with any Restrained Party's online marketplaces; or (iii) providing services relating to the advertisement or sale of any Restrained Product (Third-Party Provider); including, without limitation, any online marketplace platforms such as eBay.com, Inc., with actual notice of this Order, shall within five business days after receipt of such notice: (i) cease selling all Restrained Products; (ii) disable all mechanisms relating to the sale of all Restrained Products; (iii) disable all listings for the Restrained Products, and (iv) disable and cease displaying any advertisements used by or associated with any Defendant in connection with the sale of any Restrained Product.

4.  Any Third-Party Provider with actual notice of this Order, including, but not limited to, eBay and eBay Managed Payments, shall within five business days of receipt of this Order: (a) locate all seller accounts, financial accounts, and funds connected to Defendants' online marketplaces, including, but not limited to, any financial accounts connected to the Defendants, (b) restrain and enjoin any such seller accounts, financial accounts, or funds from transferring or disposing of any money, products, or other of Defendants' assets until further ordered by this court, and (c) serve upon counsel for AGS the complete account numbers, account owner names, account owner email addresses, account owner addresses, institutions, balances, transaction history, and history of transfers to and/or from any account in which the Defendants hold a legal or equitable interest, which

information shall be treated by counsel for AGS as Attorneys' Eyes Only and not disclosed to AGS or to anyone other than the court.

5. Any Third-Party Provider with actual notice of this Order is temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by the court.

6. Any Third-Party Provider with actual notice of this Order shall, within five (5) business days after receipt of such notice, provide to AGS expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

    (a) the identity and location of Defendants, their agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with Defendants, including all known contact information, including any and all associated email addresses;

    (b) the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with Defendants' e-commerce storefronts and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their e-commerce storefronts;

    (c) the complete account sales history, including product name, description, purchase quantity, purchase amount, and purchase date for all webstores operated by Defendants; and

(d)    any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with Defendants, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal and Amazon Payments, or other merchant account providers, payment providers, third-party processors, and credit card associations (e.g., MasterCard and VISA).

7.    Not later than 48 hours after confirming the eBay asset freeze of Defendants' accounts, AGS shall serve a copy of this Order on Defendants through eBay's messaging feature. AGS shall provide the Court with any indication it receives from eBay that the messages sent to Defendants are returned or otherwise not received.

8.    AGS is not required to post a bond as a condition for this Temporary Restraining Order.

9.    Any Restrained Party or Third-Party Provider subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure.

IT IS HEREBY FURTHER ORDERED that this Order shall be, and is, binding upon Defendants, and each of their agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order, effective immediately upon entry of this order on the docket of the court.  This Order shall remain in effect for fourteen days from the date of entry unless, within such time, the Order, for good cause

20

shown, is extended for an additional period not to exceed fourteen days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65 or by stipulation.

SO ORDERED this 22nd day of April, 2026, at 8:30 AM.

BY THE COURT:

_____

ROBERT J. SHELBY
United States District Judge